**David F. HOUSTON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 15, 1982.

Order Vacating Order for Discretionary Review and Remanding to the Court of Appeals for Final Disposition Oct. 12, 1982.

Paul G. Tobin, Frank W. Heft, Jr., Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Richard O. Wyatt, Asst. Atty. Gen., Frankfort, for appellee.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

Houston appeals from his conviction and sentence for theft of a pickup truck in Kentucky. His case began when he was arrested on May 15, 1980, in Indiana for the theft of a van from Vandalia, Ohio. On May 19, 1980, Kentucky authorities questioned Houston about a vehicular homicide which had occurred in Jefferson County on May 13, 1980. While being questioned, Houston admitted stealing the Kentucky pickup truck in Louisville on May 14, 1980. On May 20, 1980, a Jefferson County Grand Jury indicted Houston for the theft of the truck. A trial was conducted on April 9, 1981. A jury found Houston guilty of theft by unlawful taking over $100 and recommended that a sentence of five years imprisonment be imposed. Judgment was entered in accordance with the jury's verdict.

Houston asserts six errors were committed at his trial. He first alleges that he was denied a speedy trial. The facts indicate some delay in Houston's being brought to trial. No exact time limit defining a speedy trial can be predetermined. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it was held that a determination of whether a defendant has been denied a speedy trial must be based upon four considerations. *See also McDonald v. Commonwealth,* Ky., 569 S.W.2d 134 (1978).

The first consideration examines the length of the delay. Houston complains that although he was indicted on May 20, 1980, he did not learn of the indictment until October 8, 1980. He argues that the delay is inordinate and prejudicial in and of itself. We do not agree that the delay in itself prejudiced Houston or that it denied him his right to a speedy trial.

The second consideration examines the reason for the delay. It appears that the indictment against Houston lay dormant until October 8, 1980, when he brought it to the Commonwealth's attention. However, we do not find these five months to constitute prejudice or a deprivation of Houston's right to a speedy trial. Moreover, once Houston brought his indictment to the Commonwealth's attention and requested a speedy trial, the Commonwealth did act with due dispatch to prosecute him. We do not believe our proper response to the Commonwealth's unexplained delay of five months in prosecuting its case would be to dismiss the case on the grounds Houston advocates.

The third consideration is whether Houston asserted his rights to and desire for a speedy trial. We note that he did.

The fourth consideration is the resultant prejudice to Houston due to the delay. One of Houston's witnesses died between the time Houston requested a speedy trial and the trial date. Houston characterized the witness as crucial. The loss of the witness is certainly unfortunate. However, the loss of one potential witness because of death during the pendency of a trial is not so prejudicial that dismissal is necessarily warranted. Further, the Commonwealth cannot be blamed for the loss of the witness; neither can it be said that it deliberately delayed Houston's trial or that it knew that by doing so Houston's defense would be potentially weakened. Therefore, we do not find sufficient prejudice to have resulted to have resulted to warrant a dismissal of his conviction now or the charges against him earlier.

■ Significant in our consideration of this issue is the impact of the Interstate Agreement on Detainers. KRS 440.450. The IAD requires that a defendant who properly initiates procedures under its provisions must be tried within 180 days of such request. In this case, the Commonwealth initiated and concluded Houston's trial within the 180-day requirement once the IAD was invoked by Houston. We are troubled by the fact that Houston was the one initiating the prosecution of his case. We do not find, however, that Houston was prejudiced enough to grant him the relief he requests by the delay he encountered, as we find that the trial was not unduly delayed.

■ Houston next alleges that the evidence was insufficient to sustain his conviction for theft by unlawful taking over $100. Rather, he contends the evidence shows that he took the truck only temporarily for transportation and not with the intent to deprive the truck's owner of his truck or to appropriate its major value. However, the prosecution's evidence showed that Houston was in the business of stealing vehicles and selling them by parts, that Houston told police where the truck was sitting in Vandalia, Ohio, and that police officers testified that Houston admitted stealing the truck. Houston even admitted telling police officers that he had stolen the truck. From the evidence it was not unreasonable for the jury to disbelieve Houston and to believe that he did intend to strip the parts at some later time or to use the truck for personal transportation for some indefinite period.

■ Houston contends that the trial court erred in not suppressing two incriminating oral statements he had made to Officer Bates and Detective Hall because of various constitutional violations that occurred in the taking of these statements. However, Houston's contentions of impropriety by the police officers involved with the taking of the statements are contradicted by testimony. Under the totality of the circumstances, the trial judge's treatment of this issue is not clearly erroneous. Thus we decline to disturb his decision.

■ Houston's fourth allegation of error is interesting. However, we fail to agree with his reasoning or conclusion. Houston was transferred from the Indiana Reformatory to the Jefferson County Jail on February 13, 1981. Bail was set at $25,000. He was not able to secure a bond in that amount and remained in custody until his term of imprisonment began. Houston claims that he is entitled to full credit for

the time spent incarcerated in the Jefferson County Jail prior to the disposition of the Kentucky charges. He relies on KRS 532.-120(3). That statute does require that time spent in custody prior to the commencement of a sentence as a result of a charge that culminates in the sentence be credited. The statute does not apply to Houston's case, however. Houston was incarcerated in Indiana prior to his transfer to Kentucky for these charges. He was not in the Jefferson County Jail for his inability to make bond, but because he was released to the Jefferson County Jail by Indiana where he was serving time for another criminal conviction in Indiana. Even had he posted the Kentucky bond, he would not have been technically released from custody on the Kentucky charge, as he argues. He could not have been released without the acquiescence of Indiana, and there is no showing that Indiana would have released him. Further, on examination of the Interstate Agreement on Detainers, it is apparent that although Kentucky had custody of Houston for the purpose of trying the Kentucky indictment, he was still in the custody of and subject to the jurisdiction of Indiana. Thus, the time that Houston spent in the Jefferson County Jail was not "time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence" as specified by KRS 532.120(3). Rather, it was time spent in custody due to a separate conviction. It follows that Houston was entitled to no credit for the time he was incarcerated in Jefferson County.

Houston's fifth allegation of error is that he was denied a fair trial because of the introduction of collateral criminal activity and extraneous matters creating substantial prejudice. His sixth allegation of error is that the prejudicial nature of the prosecutor's closing argument and cross-examination also denied him a fair trial. None of these allegations was raised before the trial court by way of contemporaneous objection. Therefore, they have not been preserved for review by this Court.

Further, the allegations of error do not demonstrate any manifest injustice done to Houston, nor are they of sufficient substance to persuade us that his rights were violated. Evidence of collateral criminal activity is competent and admissible to show intent or motive. *Pankey v. Commonwealth*, Ky., 485 S.W.2d 513 (1972). Counsel have a wide latitute for their closing arguments, and a prosecutor may express his opinion as to the falsity of a defense presented by the defendant. *Koonce v. Commonwealth*, Ky., 452 S.W.2d 822 (1970).

Accordingly, the conviction is affirmed.

All concur.